IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VULCAN POWER COMPANY, a                    Civ. No. 07-6105-AA
Colorado corporation,

        Plaintiff,                      OPINION AND ORDER

    v.

DAVENPORT POWER, LLC, a
Delaware LLC,

        Defendant.
_____

AIKEN, Judge:

    On May 8, 2007, plaintiff Vulcan Power Company (Vulcan) filed
suit against defendant Davenport Power LLC (Davenport), requesting
that the court vacate an arbitration award issued in "Phase I" of
the arbitration proceedings, disqualify the arbitrator, and order
the parties to select another arbitrator and begin the proceedings
anew. Having received rulings against it in arbitration and

1    - OPINION AND ORDER

related state court proceedings, Vulcan attempts to raise claims of bias and misconduct against the arbitrator in federal court.

Vulcan now moves for issuance of a preliminary injunction enjoining further arbitration proceedings until Vulcan's claims of arbitrator bias and misconduct are decided by this court. Aside from its obvious attempt at forum shopping, Vulcan is not entitled to the relief it seeks, because Vulcan failed to join an indispensable party to this action and cannot establish irreparable harm in any event. Vulcan may raise its claims in state court, where related claims and a petition to confirm the initial arbitration award remain pending.

<u>BACKGROUND</u>

The following facts are taken from the complaint and, where relevant, from the parties' briefing.

Vulcan owned or controlled federal geothermal leases over 40,000 acres of land, primarily at Newberry Volcano, Oregon (hereinafter Newberry Leases). Steve Munson is Vulcan's founder and CEO.

In 1997, Vulcan and Davenport entered into a Joint Venture Agreement (JVA) which created the general partnership Northwest Geothermal Company (NGC) to further the development of the Newberry Volcano geothermal resources. Vulcan and Davenport are the only partners in NGC. Vulcan contributed the Newberry Leases to NGC, and Davenport contributed approximately $1.5 million in cash. The

2    - OPINION AND ORDER

Newberry Leases are wholly owned by NGC, not by either partner.

Since 1997, the parties have disputed their respective duties and authority under the JVA, and ultimately, which of them should control the development and of the Newberry geothermal resources. According to Davenport, the essential bargain of the JVA was that Vulcan would relinquish operational control over the Newberry Leases in exchange for Davenport's financial investment in developing the geothermal resource.

On August 30, 2006, Davenport and NGC brought suit in Deschutes County Circuit court seeking judicial expulsion of Vulcan from NGC for misconduct under Or. Rev. Stat. § 67.220. Davenport also sought a preliminary injunction to enjoin Vulcan and its subsidiary, Military-Newberry LLC, from taking any action related to a Power Purchase Agreement (PPA) between Military-Newberry and Pacific Gas & Electric (PGE) if such action would affect the Newberry Leases. Davenport claims that Vulcan - through its subsidiary - executed a PPA agreement with PGE which purported to commit the Newberry Leases as a source of power, with all revenues derived from those leases going to Vulcan, rather than NGC. Further, Davenport claims that Vulcan did so without Davenport's knowledge.

Vulcan moved to stay the state court proceedings and compel arbitration of Davenport's judicial expulsion claim.

On October 3, 2006, the state court granted Vulcan's motion

3    - OPINION AND ORDER

and ruled that the expulsion claim be referred to arbitration.  The state court retained jurisdiction over Davenport's motion for preliminary injunction against Vulcan and of Davenport's claims against Vulcan's subsidiary, Military-Newberry.

After extensive hearings, on November 30, 2006, the state court granted Davenport's motion for preliminary injunction against Vulcan, finding that there was "no disputed material fact question about whether Vulcan acted wrongfully in forming or purporting to form the [Newberry-Military], which then committed or purported to commit NGC assets to the PPA."  Further, the state court found that "this is a complex, carefully-orchestrated attempt by Mr. Munson to regain the control he gave up when the Joint Venture Agreement was signed and Davenport became his partner," and that "this was [a] particularly outrageous and egregious attempt by Mr. Munson and Vulcan to convert the assets of the venture to their own use."

In accordance with the state court's order compelling arbitration, NGC, Davenport, and Vulcan each commenced arbitration with the American Arbitration Association (AAA).  On January 5, 2007, the parties, using the AAA arbitration selection process, selected Joseph McMahon as arbitrator from a national panel of arbitrators specializing in energy issues.  At a scheduling conference on January 22, 2007, McMahon ordered that the parties' equitable claims would be heard and decided in "Phase I" of the proceedings, and that damages and partnership buy-out issues, if

any, would be heard and decided in "Phase II."

The Phase I hearing began on April 9, 2007 and continued through April 20.  McMahon heard nine full days of testimony from 21 witnesses and received almost 700 exhibits.

On May 1, 2007, McMahon issued an Interim Award granting Davenport's claims to expel Vulcan from the NGC partnership and to declare that Vulcan did not have the authority to enter into the Military-Newberry PPA using the Newberry Leases.  The Interim Award also declared that Davenport was the operator of NGC and denied Vulcan's claim to expel Davenport from the partnership.

On May 8, 2007, the same day this federal suit was filed, Vulcan filed a confidential letter with the AAA requesting disqualification of McMahon and vacation of the Interim Award, based on McMahon's alleged bias, misconduct, and gross errors of law as alleged in this case.[1]  NGC and Davenport filed oppositions to the letter, and on May 14, 2007, the AAA denied Vulcan's request to disqualify McMahon and affirmed him as arbitrator.

On May 15, 2007, Vulcan filed its motion for preliminary

_____

[1]Vulcan's claims of bias arise from McMahon's rulings regarding discovery and what claims could be heard during Phase I. Additionally, Vulcan relies on the fact that, in response to concerns voiced by Davenport and NGC witnesses and allegations of past violence, a security guard was posted outside the hotel conference room while Munson testified, and McMahon asked Vulcan's counsel to ensure that Munson was not carrying any firearms.

Vulcan's claims of gross errors of law arise from McMahon's ruling that Vulcan interfered with NGC's interests in the Newberry leases by entering into a PPA contract with PGE.

injunction.    Vulcan    subsequently    filed    a    motion    for    temporary
restraining    order    and    sought    an    immediate    hearing.    Davenport
opposes    Vulcan's    motions    and    moves    to    dismiss    this    action    for
failure    to    join    NGC,    an    indispensable    party.

DISCUSSION

Vulcan    seeks    a    preliminary    injunction    to    abate    the    arbitration
proceedings    between    the    parties    until    the    court    determines    Vulcan's
underlying    claims    alleged    in    its    Complaint.    Essentially,    Vulcan
claims    that    the    arbitrator    is    biased    against    Vulcan    and    its    CEO
Steve    Munson    and    committed    misconduct    and    gross    errors    of    law,    all
of    which    caused    prejudice    to    Vulcan    in    Phase    I    of    the    arbitration.
Vulcan    seeks    an    order    setting    aside    and    vacating    the    arbitration
award    issued    in    Phase    I,    disqualifying    the    arbitrator,    enjoining
Davenport    from    relying    on    the    arbitration    award,    and    declaring    that
these    matters    may    be    arbitrated    upon    the    appointment    of    a    neutral
arbitrator.    Complaint,    p.    17.[2]

To    obtain    a    preliminary    injunction,    the    moving    party    must
demonstrate    "either    (1)    a    likelihood    of    success    on    the    merits    and
the    possibility    of    irreparable    harm,    or    (2)    the    existence    of
serious    questions    going    to    the    merits    and    the    balance    of    hardships
tipping    in    the    [movant's]    favor."    See    Oakland    Tribune,    Inc.    v.

---

[2]Vulcan    filed    an    amended    complaint    "as    a    matter    of    course"
after    Davenport    filed    its    motion    to    dismiss.    Because    a    motion    to
dismiss    is    considered    a    responsive    pleading,    Vulcan    cannot    file    an
amended    complaint    without    leave    of    court    or    the    agreement    of
Davenport.    Fed.    R.    Civ.    P.    15(a).

Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir. 1985)
(quoting Apple Computer, Inc v. Formula Int'l, Inc., 725 F.2d 521,
523 (9th Cir. 1984)).   While stated as alternatives, "[t]hese
formulations are not different tests but represent two points on a
sliding scale in which the degree of irreparable harm increases as
the probability of success on the merits decreases." Id.  Even if
the balance of hardships tips sharply in Vulcan's favor, however,
it must be shown as "an irreducible minimum" that there is a fair
chance of success on the merits. Stanley v. Univ. of S. Calif., 13
F.3d 1313, 1319 (1994) (citation omitted).

      Notably, Vulcan does not seek a preliminary injunction to
preserve the status quo.   Rather, Vulcan seeks a mandatory
injunction that would abate ongoing, pending arbitration
proceedings - proceedings that were ordered by a state court.
Further, Davenport has petitioned the state court to confirm the
Phase I arbitration award; therefore, the relief Vulcan seeks would
interfere with ongoing state proceedings as well.  "A mandatory
injunction goes well beyond simply maintaining the status quo
pendente lite [and] is particularly disfavored." Stanley, 13 F.3d
at 1320 (alteration in original; quotation marks and citation
omitted).  When a mandatory preliminary injunction is requested,
the district court should deny such relief "unless the facts and
law clearly favor the moving party." Id. (citations omitted).

      First, I find that Vulcan fails to show irreparable harm if

7    - OPINION AND ORDER

the arbitration is allowed to proceed.  Oregon statutory law provides for an arbitration vacation procedure once a petition to confirm an arbitration award is sought, if there was "[m]isconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding," or "[a]n arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy or otherwise conducted the hearing contrary to ORS 36.665 so as to prejudice substantially the rights of a party to the arbitration proceeding."  Or. Rev. Stat. § 36.705.

As stated above, Davenport recently filed a petition to confirm the "Phase I" award issued by the arbitrator.  Therefore, Vulcan may raise its claims of bias, misconduct, and gross errors of law pursuant to the procedure set forth under § 36.705 in the state court and may appeal any ruling through the Oregon appellate courts.  To the extent Vulcan claims that the Phase II arbitration proceedings will be unfairly conducted by the arbitrator, Vulcan has the same remedy available upon the conclusion of those proceedings.  Therefore, Vulcan fails to establish irreparable harm.

Second, I also find that Vulcan fails to establish a likelihood of success on the merits, because joinder of an indispensable party will destroy subject matter jurisdiction. Vulcan asserts federal jurisdiction based on the diversity of the

parties - Vulcan and Davenport.  However, if joinder of NGC is required, as Davenport asserts, diversity jurisdiction will no longer exist.[3]  Vulcan responds that NGC is not indispensable, and that this action may proceed in its absence.

Whether a party is indispensable to an action involves "three successive inquiries." E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005).  First, the court determines whether the absent party is "necessary," i.e., whether "in the person's absence complete relief cannot be accorded among those already parties," or whether "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest. . . ."  Fed. R. Civ. P. 19(a)(1) and (a)(2)(i).  Second, the court determines the feasibility of joinder.  Finally, if the absent party is necessary and cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being

---

[3]Vulcan also attempts to assert federal question jurisdiction under the federal Geothermal Steam Act, 30 U.S.C. §§ 1001-1025. However, Vulcan does not invoke the Geothermal Steam Act in any of its claims; indeed, the only relief sought by Vulcan is vacation of the Interim Award, removal of the arbitrator, and re-commencement of the proceedings after a different and "neutral" arbitrator is selected.  Such claims do not implicate a federal question in any respect.  The fact that the underlying proceedings may affect geothermal leases that are governed by federal law does not create a federal question with respect to Vulcan's claims against the arbitrator.

thus regarded as indispensable." Fed. R. Civ. P. 19(b).

Vulcan concedes that NGC is "necessary," and that joinder of NGC is not feasible because it would destroy diversity jurisdiction. Therefore, the only question is whether NGC is an "indispensable" party under Rule 19(b): "whether in equity and good conscience the action should proceed among the parties before [the court], or should be dismissed." Id. In determining whether a party is indispensable, the court must consider: 1) prejudice to the parties, including the absent party; 2) whether relief could be tailored to lessen the prejudice; 3) whether an adequate remedy can be awarded without the absent party; and 4) whether there exists an alternative forum. Kescoli v. Babbitt, 101 F.3d 1304, 1310-11 (9th Cir. 1996); Fed. R. Civ. P. 19(b). I find that NGC is an indispensable party to this action, and that the case must be dismissed in its absences.

"[T]he first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the party's absence." American Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1024-25 (9th Cir. 2002). Here, the Phase I ruling of the arbitrator explicitly affects NGC's interests, in that the arbitrator made findings as to who is the most appropriate party to manage and operate the geothermal leases - NGC's most valuable assets - as well as findings regarding

Vulcan's actions in receiving payments intended for NGC.  If the arbitration is abated and the award vacated, NGC's interests will be impaired and impeded without NGC's participation.  Notably, NGC is a party to the arbitration and is bound any ruling issued during those proceedings.  Thus, the first factor favors dismissal.

Likewise, I find that it is not possible to lessen or avoid prejudice to NGC by tailoring the relief sought.  Vulcan seeks nothing less than abatement of the arbitration proceedings and vacation of the arbitration award.  I cannot discern how the resulting prejudice to NGC could be lessened; not only would NGC's interests be affected, they would be placed in question in light of Vulcan and Davenport's ongoing and bitter dispute.  For the same reasons, I find that an adequate remedy cannot be rendered absent NGC's participation, and therefore, the second and third factors also favor dismissal.

Finally, Vulcan has an adequate alternative forum: the state court that compelled arbitration and has jurisdiction over related claims against Vulcan and its subsidiary.  In fact, this is not just an alternative forum, it is the most appropriate forum under the circumstances.  As discussed above, Oregon statutory law provides for an arbitration vacation procedure once a petition to confirm an arbitration award is sought, and Davenport recently filed a petition to confirm the "Phase I" award issued by the arbitrator.  Therefore, Vulcan may raise its claims in the state

11    - OPINION AND ORDER

court with jurisdiction over the matter.

Vulcan's reliance on <u>G.C. & K.B. Investments, Inc. v. Wilson</u>, 326 F.3d 1096 (9th Cir. 2003) is wholly unpersuasive.  There, the plaintiff had filed suit in federal court to confirm an arbitration award, and the Ninth Circuit held, *inter alia*, that the *Rooker-Feldman* doctrine did not prevent the district court's confirmation of the award despite subsequent claims raised by the defendant in state court.  <u>Id.</u> at 1104-05.  It did not involve an indispensable party or a request for injunctive relief to abate ongoing arbitration proceedings.

Likewise, I am not persuaded by Vulcan's reliance on <u>Weirich v. Wehrli</u>, 2007 WL 899132 (N.D. Ill. March 20, 2007), where the district court found that a partnership was not an indispensable party in an action seeking dissolution.  <u>Id.</u> *3.  The partnership in that case had "no legal existence outside of the general partners," <u>id.</u> *2, whereas NGC is a separate legal entity pursuant to Oregon law.  Or. Rev. Stat. § 67.050(1) ("A partnership is an entity distinct from its partners."); <u>see also</u> <u>id.</u> § 67.110(1) ("A partnership may sue and be sued in the name of the partnership.").  Further, this is not a dissolution action - it is an action to abate proceedings to which NGC is already a party.  Therefore, I find <u>Weirich</u> distinguishable.

In sum, NGC is indispensable to this action, because proceeding in its absence could impede or impair its ability to

protect its legal interests, no adequate remedy can be rendered to lessen the prejudice, and an alternative forum exists.

<u>CONCLUSION</u>

Vulcan presents no evidence that it will suffer irreparable harm, or that it will succeed on the merits as Northwest Geothermal Company is an indispensable party whose joinder will destroy jurisdiction. Moreover, Vulcan may seek relief in the state court which retains jurisdiction over related claims. Accordingly, Vulcan's motions for preliminary injunction and temporary restraining order (docs. 3, 7) are DENIED and Davenport's motion to dismiss (doc. 11) is GRANTED. Plaintiff's motion to seal and motion for protective order (docs. 30 and 33) are GRANTED and plaintiff's motion to strike (doc. 23) is DENIED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this ___4___ day of June, 2007.


_____/s/ Ann Aiken_____
                    Ann Aiken
          United States District Judge

13   - OPINION AND ORDER